IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-00790-PAB

PHUOC M. TRAN,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

_____

**ORDER**
_____

This matter comes before the Court on plaintiff Phuoc M. Tran's complaint [Docket No. 1], filed on March 28, 2011. Plaintiff seeks review of the final decision of defendant Michael J. Astrue (the "Commissioner") denying plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c.[1] The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

**I. BACKGROUND**

Plaintiff filed his applications for disability benefits on September 12, 2007, alleging that he had been disabled since November 30, 2006. After an initial denial of

---

[1] In the Joint Case Management Plan, neither party requested oral argument. *See* Docket No. 8 at 2, ¶ 9. In his opening brief, however, plaintiff requested oral argument. *See* Docket No. 11 at 11. The Court, however, concludes that the appeal can be resolved based on the parties' filings.

his applications, an Administrative Law Judge ("ALJ") held a hearing on June 12, 2009. In a decision dated July 24, 2009, the ALJ denied plaintiff's claim for disability benefits.

The ALJ found that plaintiff had the "following severe impairments: right basal thumb arthritis, status-post right thumb CMC interposition and suspension arthroplasty, and status-post laceration of the left little finger with the two distal joints of the finger fixed in an extended position with no range of motion."[2] R. at 22.  The ALJ, however, concluded that these impairments, alone or in combination, did not meet one of the regulations' listed impairments. R. at 23. The ALJ found that plaintiff retained the residual functional capacity ("RFC") to "lift or carry, or push and pull 40 pounds." R. at 23. In reliance on the testimony of a vocational expert ("VE"), the ALJ concluded that plaintiff is "capable of performing his past relevant work as a grinder I or polish machine operator as he actually performed these jobs." R. at 24-25.

Plaintiff appealed this decision to the Appeals Council of the Social Security Administration, which declined review. *See* R. at 1-3. Therefore, the ALJ's decision is the final decision of the Commissioner. *See* R. at 1.

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse

---

[2]"CMC" stands for the carpometacarpal joint.

an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2).

Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

> which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of

those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C. The ALJ's Decision

Plaintiff argues that the ALJ failed to properly evaluate the record evidence and improperly assessed his credibility. Although not for the specific reasons asserted by plaintiff, the Court agrees.

Plaintiff's claim for disability benefits relied almost exclusively on arthritis in his right thumb. On May 19, 2008, Dr. Christopher Brian conducted surgery on plaintiff's thumb. The ALJ concluded that the medical evidence did not support plaintiff's claims of pain and limitation and concluded that plaintiff was not credible regarding the extent to which right-thumb pain continued to impair him after his surgery. The ALJ found plaintiff to have been "incredibly vague and evasive" during the hearing. Although the ALJ may rely on such observations, he "may not rely solely on his personal observations to discredit a plaintiff's allegations." *Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000); *see* Social Security Rule ("SSR") 96-7p. The ALJ's other bases for reaching his conclusion, however, were not supported by substantial evidence.

The ALJ's RFC determination relied primarily on the opinions of Dr. Brian and of Tim Johnson, Dr. Brian's physician's assistant. At least in part based upon his interpretation of this evidence, the ALJ found plaintiff's statements regarding his pain and limitations not to be credible. In regard to Dr. Brian's opinion, however, the ALJ cites only Dr. Brian's pre-operative prediction that, if the surgery were successful, plaintiff would be able to perform fine manipulations with his right hand after about three to five months of recovery. *See* R. at 24. Dr. Brian did not see plaintiff after the

surgery. Therefore, the Court finds that Dr. Brian's prediction does not constitute substantial evidence supporting a determination of plaintiff's post-operative limitations.

In the absence of any evidence from Dr. Brian confirming that his prediction was realized, the ALJ addressed the notations of P.A. Johnson. P.A. Johnson examined plaintiff's thumb during three post-operative visits, the last visit being on July 23, 2008. The ALJ noted that plaintiff told P.A. Johnson on July 23, 2008 that his thumb was improving. R. at 23. The ALJ further noted that P.A. Johnson declined to support a disability application because "most individuals are back to normal activities in 3-5 months." *See* R. at 23. The ALJ does not explain whether he found that "normal activities" included the tasks required for plaintiff to engage in his past relevant work. In any event, the ALJ appears to have improperly treated P.A. Johnson's opinion as one of a "treating source." *See* R. at 24 (referring to Dr. Brian and P.A. Johnson as plaintiff's treating sources); *cf.* 20 C.F.R. § 416.927(d)(2) (stating that a treating source may be given controlling weight among the medical evidence in a claimant's case record under certain circumstances).[3] However, a "physician's assistant is not an acceptable medical source and thus cannot be considered a treating source whose opinion may be entitled to controlling weight." *Barela v. Astrue*, 2010 WL 5013829, at *3 (D. Ariz. Dec. 3, 2010) (noting that the opinion of a physician's assistant, as an "other source," is insufficient on its own to "establish plaintiff's medical limitations") (citing SSR 06-03p).

---

[3]Explaining how an ALJ will weigh medical opinions, subsection 416.927(d) lists the following factors to be considered: examining relationship, treatment relationship, supportability, consistency with the record as a whole, and specialization.

Moreover, as additional evidence weighing against plaintiff's claims of disabling pain, the ALJ noted that the July 23, 2008 visit with P.A. Johnson was the last medical record of any treatment of plaintiff's thumb.  *See* R. at 23 (noting the absence of further treatment "despite the claimant's later testimony that his right hand is in constant pain.").  The ALJ appears to have relied upon that apparent inconsistency despite also noting that plaintiff reported to P.A. Johnson on July 23, 2008 that he was losing his health insurance.  *See* R. at 23; *see also* R. at 206; R. at 243.  The ALJ did not explain what, if any, role the loss of insurance may have played in the cessation of medical treatment.  The law is clear that, before concluding that a failure to receive treatment calls plaintiff's allegations into question, an ALJ must address what, if any, impact the loss of insurance may have had on plaintiff's ability to afford treatment.  *See* SSR 96-7p (prohibiting an ALJ from drawing "any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering . . . information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment," including "[t]he individual's [inability] to afford treatment [or obtain] access to free or low-cost medical services"); *see also Alesia v. Astrue*, 789 F. Supp. 2d 921, 934 (N.D. Ill. 2011) (concluding that the "ALJ erred by drawing negative inferences from the lack of treatment without first addressing Claimant's ability to pay" and noting that the "ability to pay issue is especially significant here, because Claimant did pursue medical treatment while she held a job with health insurance benefits and only stopped when she lost her insurance"); *Harrison v. Astrue*, 2010 WL 4269494, at *6 (C.D. Cal. Oct. 21, 2010) (concluding that the ALJ erred where the "ALJ acknowledged that Claimant is not

insured for medical coverage . . . but never considered that fact in rejecting [plaintiff's] credibility").[4] Not only did the ALJ not address the potential impact of the loss of insurance in the opinion, he never asked plaintiff during the hearing why he failed to receive treatment after July 23, 2008. *See* SSR 96-7p ("The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner."). Because "[p]laintiff's statement that []he has no insurance is undisputed and renders any lack of continuing treatment an inappropriate basis for discounting h[is] credibility," *Harrison*, 2010 WL 4269494, at *6, the ALJ's apparent reliance on that ground was inappropriate.

In sum, the ALJ's reliance on "treating source" opinion and apparent reliance on plaintiff's failure to seek further treatment do not support the ALJ's RFC determination. Therefore, the ALJ's conclusion that the pre-operative opinion of consultative physician Dr. Laura Moran that plaintiff "should be able to lift and carry about 40 pounds" is "not inconsistent" with the limitations imposed by Dr. Brian and P.A. Johnson, R. at 23, is not supported by substantial evidence. Furthermore, the Court notes that Dr. Moran did not specify whether she believed plaintiff would be able to lift and carry 40 pounds with his

---

[4] In *Blake v. Apfel*, 2000 WL 1466128, at *7 (D.N.H. Jan. 28, 2000), the Court noted that, despite record evidence regarding plaintiff's loss of health insurance, the ALJ only referenced that fact without "examining the effect of [plaintiff's] limited resources on his ability to seek treatment." The Court concluded that, "[r]equiring the ALJ to give fuller consideration to the effect of [plaintiff's] financial hardship on his treatment options is particularly appropriate given that 'the purpose of the Social Security Act is to ameliorate some of the rigors of life for those who are disabled or impoverished.'" *Id.* at *7 (quoting *Jones v. Sullivan*, 804 F. Supp. 1398, 1403 (D. Kan. 1992), which cited *Dvorak v. Celebrezze*, 345 F.2d 894, 897 (10th Cir.1965)).

*right* hand. *See* R. at 202. The only opinion Dr. Moran reached that specifically addressed plaintiff's right hand was that plaintiff would "probably have difficulty doing repetitive motion with his dominant right hand." R. at 202.

In addition to the foregoing errors, the ALJ, when "[e]valuating the intensity and persistence" of plaintiff's pain, failed to consider "all of the available evidence." 20 C.F.R. § 404.1529(c)(1). The ALJ concluded that plaintiff's "testimony as to constant pain and inability to use his right hand is not documented in the reports of any treating or examining medical sources." R. at 24. The record, however, contains the medical reports of plaintiff's primary care physician, Dr. Hai Bui, a treating source never mentioned by the ALJ. Dr. Bui's medical records reveal "chronic" right thumb pain over the course of many months leading up to the May 2008 surgery. *See, e.g.*, R. at 228, 232-39, 241.[5] Furthermore, Dr. Brian's treatment of plaintiff is consistent with these reports of persistent pain, as Dr. Brian concluded that surgery was the appropriate course of treatment after more conservative methods were unsuccessful. *See* R. at 213-14 (where Dr. Brian notes on May 1, 2008 that plaintiff, who had been "compliant with formal therapy . . . reports that his pain is worse" and concluding that surgery would be beneficial because plaintiff "failed to improve with conservative treatment to include activity modification, occupational therapy, NSAIDS, and steroid injections"). The ALJ

---

[5]The ALJ appears to have found that plaintiff exaggerated the impact of the pain on his ability to sleep. *See* R. at 24. Although the ALJ may evaluate plaintiff's credibility in light of plaintiff's testimony that he is awakened four times per night for an hour each time due to pain, the ALJ must assess such claims in light of the entire evidentiary record. *See* R. at 242 (where plaintiff reported to Dr. Bui on September 12, 2007 that he is "not sleeping"); *see also* R. at 238-39 (reporting sleeping difficulties on October 18, 2007).

did not discuss any of this medical evidence.[6]

## III. CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ's determination that plaintiff is not disabled is not supported by substantial evidence. Therefore, it is

**ORDERED** that the Commissioner's decision denying disability benefits to plaintiff is REVERSED and REMANDED for additional proceedings.

---

[6]Plaintiff also argues that the ALJ failed to adequately develop a record of his possible depression. This argument is based on notations by plaintiff's primary care physician prior to plaintiff's surgery. *See* R. at 242 (noting on September 12, 2007 that plaintiff was "sad" and "depress[ed]"); R. at 236 (noting that plaintiff is depressed on November 21, 2007); *see also* R. at 232 (noting plaintiff's "depression" on March 19, 2008). Yet, neither plaintiff or his counsel ever identified depression as a basis for his disability claim. "A social security disability hearing is nonadversarial, . . . and the ALJ bears responsibility for ensuring that 'an adequate record is developed during the disability hearing *consistent with the issues raised*.'" *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (citation omitted) (emphasis added). "'[T]he ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present [the] claimant's case in a way that the claimant's claims are adequately explored,' and the ALJ 'may ordinarily require counsel to identify the issue or issues requiring further development.'" *Id.* (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997)). With that said, plaintiff may request that this potential basis be developed on remand. Furthermore, and in any event, plaintiff's complaints regarding depression that are apparently associated with his pain constitute evidence relevant to an assessment of the pain's severity and plaintiff's credibility.

Plaintiff further argues that the ALJ failed to consider that he was "closely approaching advanced age" in assessing how easily plaintiff could adjust to new work. *See* 20 C.F.R. § 404.1563(d) ("If you are closely approaching advanced age (age 50–54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work."). The ALJ, however, concluded that plaintiff could perform his past relevant work. This issue will only be implicated on remand if the ALJ determines that plaintiff is unable to do so.

DATED January 30, 2012.

                                         BY THE COURT:

                                         s/Philip A. Brimmer
                                         PHILIP A. BRIMMER
                                         United States District Judge